The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Steigman presiding. Good afternoon, counsel. This is our case number 4-22-0797. The State of Illinois v. Dustin A. Finlaw. Counsel for the appellant, please state your name. Sarah Lucy, your honor. Thank you. And counsel for the appellate, please state your name. Your honor. Okay, good. Okay, Ms. Lucy, you may proceed on behalf of the appellant. Thank you, your honor. Good afternoon, and may it please the court, counsel. My name is Sarah Lucy from the Office of the State Appellate Defender, and I represent the appellant, Dustin Finlaw. In this case, the trial court erred twice, both times by misunderstanding the standard that applied at the hearing that was being held. First, at the restoration hearing, the trial court determined that it could not rule out that Dustin was fit, rather than ruling out the possibility that he was unfit. Then, at his motion hearing to go pro se, the trial court believed that it was bound by Dustin's request to proceed pro se, rather than endorsing every reasonable presumption against the waiver of counsel. To the first error, the trial court failed to have a proper restoration hearing when it held that Dustin was restored to competency because it did not know that Dustin could prove that he was no longer hearing voices. One problem with this is that Dustin testified incorrectly, demonstrably falsely at his fitness hearing, saying that he believed that he was misdiagnosed with schizophrenia and denying that he had ever heard voices, aside from a brief instance in 2018, where he claimed that he was sleep deprived. Well, I'm not sure I understand your question, or your comment, counsel. Were you talking about how the court was saying it wasn't sure, or didn't see how the defendant could establish that he was no longer hearing voices? Yes, Your Honor. That was basically the sum total of the reasoning that the trial court gave in this situation. Well, but whether he hears voices or not isn't directly connected at all, is it, to his fitness to stand trial and the criteria governing that? It doesn't have to be, Your Honor. In this case, it is. In this case, the problem that all the parties agreed upon was whether or not Dustin would be able to assist in his defense when he told Dr. Killian that he would always listen to Seraphine rather than his own defense attorney. So while Dr. Killian gave the example that Dustin could believe that he owned all the BMWs in Jacksonville and that wouldn't be a problem, or he could make the conscientious decision to listen to his brother rather than listen to his attorney, those weren't the circumstances that we were worried about in this case. Well, why not? As a matter of fact, your before panel of experienced trial judges have dealt with lots of lawyers and defendants in similar cases where lawyers complain the defendant doesn't believe me or want to go along with me. He's listening to mama or his girlfriend or his brother or someone else. Is that a sign that he's not fit to stand trial for rejects his lawyer's advice because of what he hears from some other source? Deciding to listen to another source over your own attorney may be a bad idea, but when it doesn't stem from a mental condition, it's your conscious choice. It's that defendant's choice. My question, counsel, was that a function of lack of fitness to stand trial, that attorney, that a defendant chooses to disregard his lawyer's advice, possibly listening to counsel of others, or just choose disregarded, period. When it is a choice, that is not going to be a bar towards fitness. When it is not a choice, because it is a condition of. We're losing your counsel. We've lost your response. I beg your pardon. I can your honor. I apologize. I don't know why my Internet would not be working except that the Murphy's law. Well, mine is unstable. Is everyone able to hear me now? Yes. Your honor, going back to my response to your question. Here, what we have is not Dustin making a conscious decision. We have him suffering from the ongoing effects of severe schizophrenia for which he is not taking his medication. He has been seeing seraphine since he was 11 years old and has been following her directed since then. Well, but we know counsel good counsel. Excuse me for interrupting, but we know that he testified that he was not hearing voices at the time. This hearing the restoration hearing was being conducted. We also know that mental illness is a chronic illness and that sometimes the symptoms do come and go. And so he testified and the trial judge certainly had the discretion to listen and believe that testimony that at the time, certainly of the hearing, he was not hearing voices hearing seraphin and or listening to seraphin. I think this would have been a very different case if his testimony had been. I was hearing seraphin in 2018 and 2019 when I told Dr Killian that I was when I reported at IDHS that I was when I was found to be unfit by all these litany of doctors. But now that I'm medication compliant, and if the evidence had supported that he was, in fact, medication compliant, which he was not. And then he and he simply said, I am no longer hearing voices that's restored to fitness. That is absolutely not what we see in this case. What we have him is a here is a blanket denial. Really that he's ever heard voices he says since 2018 I was sleep deprived when I was first arrested, and I was seeing some sort of Forbes. Another question. Other than your other than your concern about his hearing voices from the seraphim. Is there anything in this record to demonstrate that defendant did not understand the nature and purpose of the proceedings against them, or demonstrate that he was unable to cooperate with counsel. The problem here is very much the second problem. I believe that all parties below agreed that Dustin is a very intelligent young man and was able to understand the role of the judge the role of the prosecutor, the charges against him, etc. Defense counsel was concerned from the very first and up until he was dismissed as counsel and transferred into his role as standby counsel, he did not believe that he was properly able to communicate with Dustin or that Dustin was able to assist in his defense, which is an important problem. Again goes back solely if I understand your argument, if I understood it correctly, solely to the business about how he's hearing seraphim would take seraphim advice over councils, isn't that the sole basis. That is the major concern and I think it's well you say major I said soul. So if I'm mistaken that it's the sole basis point out what additional grounds you have that the defendant demonstrated didn't understand the nature of purposes of the proceedings against them, or demonstrate an inability to communicate and cooperate with council. I think that would fundamentally go to what he said about keeping secrets from counsel that he's being directed by others, whether it's seraphim the lamb or other grays about what he should should not disclose what he wanted his defense to be he's listening to these other sources that are figments of his imagination. Rather than being able to be present enough to make these rational decisions, and ultimately the trial court who was presented with Dr Killian's testimony that he did not believe that Dustin was fit to stand trial never resolved that the presumption at the fitness hearing was that Dustin was still unfit, it was the burden of the state to prove by a preponderance of the evidence to overcome that on fitness presumption. And that's where we see the wrong standard being applied standards. Well, go ahead, I have a question about the standard of review, that was going to be a question I had to go ahead. You and the state seem to agree that it's abusive discretion. There is Supreme Court authority saying that the decision whether to find somebody fit is one that's reviewed under manifest weight. There are some cases which talk about structural pieces of the process which might be reviewed under abusive discretion such as acting on stipulations without other evidence or rubber stamping a conclusion from an expert. Is it correct that you are not challenging the balance of the evidence here the sufficiency of the evidence, you are challenging the way in which the trial court conducted the hearing. I would say that I am challenging, both the sufficiency of the state's evidence, as well as the way in which the trial court resolved its credibility. I know that I personally put great stock in people be Gibson, recognizing of course that is not a Supreme Court case. However, it was the most akin case, and they considered de novo review considered manifest weight review decided that manifest weight was inappropriate in this circumstance, because it presumed that the, that the hearing had been proper and so that's why. So the idea is there, there are some things that when you fall below a level that means that the hearing really didn't didn't satisfy our expected minimums is that the argument that you're making. Correct Your Honor here the fitness here and did not satisfy due process. Well, but we do have this is not like some of the other cases that you've talked about where the trial court merely relied on a stipulation of the experts that the defendant was fit to stand trial. Here we have a trial judge who took a very independent and active role in fact when Dr Killian testified at this hearing. He certainly questioned him during the course of the hearing he considered the reports he considered the testimony of a nurse, aren't you really asking us to be the judges of the credibility of the experts and the witnesses the trial judge her. And certainly that's not our role. I'm sorry, we've just had our phones fixed here. Let me see if I can. I guess it's taken care of. I apologize. Isn't the role isn't that the role that you are asking this court to assume. In this case, not necessarily Your Honor because here what we have is, is blatant mistruths, which is sort of where I began my argument, where the the trial court is is misapplying the standard having heard Dustin's evidence. There was immediately disproven and shown to be false, and then relied, apparently because he didn't actually state this in the record but then apparently gave more credence to Dr pans report, then Dr Killian's report. However, it is clear from Dr pans report that by that time in late 2020 Dustin had become untruthful. Once again, we see in Dustin's interview with Dr pan this denial, this rolling back. But you're saying untruthful, as opposed to inconsistent I mean those are two different things. What what Dustin testified to is something that is subjective. Is it not, and perhaps he did say something inconsistent to the two different experts at different times. But we also have Dr Killian's testimony, do we not, that he was quite surprised by Dustin's ability to be coherent to conduct himself properly in courtroom proceeding and he hadn't seen that when he examined Dustin in 2018 and 2019 did he. Correct Your Honor. Absolutely correct. I think that would go to Dr Killian's later testimony where he said that Dustin is an expert in anti malingering. He has a vested interest in being perceived as fit. It was very clear that he did not want to return to Chester he had told Dr Killian, he did not want to return to Chester where he had been attacked, where the medication and given him seizures. So it is, it is very possible given as I said earlier, Dustin is an incredibly intelligent young man, that he would be able to comport himself for the length of the hearing, as if nothing were the matter but what we have is at least three doctors, independently of one another, finding that Dustin suffered from schizophrenia, and we have evidence at the hearing that this schizophrenia was not being treated with medication. And even so, we have these are not even so but we also have this complete disavowal now from Dustin, not saying I've recovered from hearing voices but saying, Oh, I never heard voices. That really doesn't comport with Dr Killian who was a leading forensic psychologist, who at one point in his testimony said that he had examined 1800 cases I don't know if that's an accurate number but to believe that he would have fooled Dr Killian into believing that he was having such severe schizophrenic symptoms to say that he fooled IDHS into thinking he was having severe schizophrenic symptoms. And then Dr Pam's opinion was that he was schizophrenic and suffered from schizophrenia. And then, Dustin is saying oh no that's not true. I have a question on the second issue, you raise, and that is this. If the trial court properly found defendant fit to stand trial, are you asserting that there is some additional requirement that the record must show trial court had to inquire about before the court could properly permit this defendant or any defendant in that situation to proceed pro se. Yes, Your Honor, it is a absolutely bifurcated question. One's fitness to stand trial does not necessarily govern their fitness to waive counsel and proceed pro se as found by our United States Supreme Court in Indiana v. Edwards. But Edwards didn't impose the second obligation, all Edwards said, if I understand correctly, is that the states were free if they wished to impose additional burdens on the court on the record before permitting a defendant with a mental illness to proceed pro se. But Illinois has never accepted that, and the Illinois Supreme Court and most recently the Illinois appellate courts have made clear that Edwards is permissive rather than prescriptive in a trial court may deny, said the second district, recently, severely mentally ill person from representing himself. That before that would happen. I'm misspending this, the trial court does not have to perform any additional inquiries and under Illinois law, the court could permit this person to do so isn't that correct. Well, Your Honor, in people the burden, our Illinois Supreme Court approved of denying a mentally ill this this particular defendant had clinical depression, denying that person the ability to waive counsel and proceed pro se. The first district and people the Perkins also made the same determination that if someone is fit to stand trial, but still suffers from mental defects, it is absolutely permissible for the trial court to deny their motion. But here what we see once again is the incorrect standard, where the trial court says you have the unfettered right no one is ever going to tell you that you don't have the constitutional right to elect to represent yourself. That is your constitutional right. Isn't that correct. No, Your Honor, it is not your, it is not your absolute constitutional right. It is a constitutional right. However, it is one that are, I'm sorry, our United States Supreme Court has said trial courts must indulge in every presumption against waiver. So that, again, is a very clear edict. I know that's a very general statement, but in this particular context, as the Supreme Court said that the mental illness really goes into this equation as an additional piece of simply saying, despite the illness, do they understand the waiver. Do they understand what they're waiving. So really, it's not as though there's a higher level of competency needed to represent yourself. There's just maybe an additional question is, has the mental illness affected your ability to understand what you need to understand to make that knowing waiver. And I believe that the record is clear here that Dustin lacked that capacity when in his motion, he was accusing Mr. Piper of forcing him to enter a plea that he didn't want to enter, which is of course one of his fundamental rights and just a decision that a trial attorney is not able to override. This goes again, not to beat a dead horse, but back to his ability to assist in his own defense and to communicate with Mr. Piper. And despite the fact that the trial court was able to review this motion, reviewed it on the record, would have seen this discrepancy, the trial court made no further inquiry into Dustin's mental health. I mean, I have. Go ahead. Isn't it. Isn't this pretty much the normal fodder at the time somebody seeks to represent themselves whether describing differences in opinions with their attorney about how to handle the case. This is, this is very normal stuff. I think we have to look beyond that to say, did he understand the waiver and you really haven't argued that he didn't. Thank you, Justice Steigman. One other brief question. Should we find that the trial court here did not properly conduct this hearing. Why wouldn't a retrospective fitness hearing be appropriate or more appropriate than a new trial which you asked for. Briefly addressing the questions in order. I will just say that the record here is not clear. The trial court did not make a clear record that Dustin was able and had the capacity to make a knowing and voluntary waiver when his mental health was still unmedicated and seriously in question. Given the issues that had happened at the restoration hearing and the reason I'm sorry the fitness hearing, and the reason that the restoration hearing would not be appropriate in this situation is, first of all, it has never been approved of by the Illinois Supreme Court people be meal is still good law, which found that this is only appropriate in psychotropic medication cases where one doctor testifying about the effects of the medication would be appropriate appellate courts have taken one sentence from people be Mitchell restoration hearings are now the norm, and taking that out of context, I urge this court not to follow the other appellate courts but to follow our Illinois Supreme Court's clear edict from people be Neil, and understanding that I am out of time unless there are any other questions, I will simply ask this court to find that his restoration hearing was an adequate remand his case for a new trial, or in the alternative to remain for a new trial with counsel. Thank you, Your Honor. Thank you, counsel, you will have an opportunity to address this again in a rebuttal. Okay. Your Honors. Yes, the court. The court. My name is kind of good and I represent the state council, you have to speak up a little bit Council. Sorry, can you hear me now. Better. Okay. Thank you, Your Honor. Um, so first I would like to address defendants ability to proceed pro se. In this case, it has never been a question of whether or not defendants middle and this prevents them from understanding court proceedings or information he is taking in, or anything of the sort. His counsel conceded that at the restoration of fitness hearing Dr Killian said that there is no question of his cognitive understanding defendant was able to hear and understand the 404 admonishments he was given. He was given the other admonishments that are strongly suggested by the case law that I'm blanking on the name of right now. Ward. The word admonishments. He was given a copy of those word admonishments to review and read over in between hearings. So, I don't think it's a question of whether or not he had the capacity to wave his or to proceed per se, excuse me, Your Honors. Further, the letter that he sent was just a common or misunderstanding of potentially whose role it is to enter a guilty plea, a legal, a legal, lack of legal knowledge, I'm sorry, Your Honors, does not prevent someone from waiving their right to counsel. Her hood which I cited in my brief. So I think that defendants was had the capacity to make a knowing and voluntary waiver of counsel and did so. Proceeding to the, whether or not the defendant was fit. Let's put with respect to that. I guess excuse me Justice Doherty. To go back to a question Justice Doherty asked opposing counsel and that had to do with the standard of review. In your brief, you do agree with opposing counsel that the standard of review that we should use as abuse of discretion. Why isn't manifest weight of the evidence appropriate here. I having trouble answering that question at the moment, Your Honor, if you would like me to do some supplemental briefing on the question. Well, we have Supreme Court case law. I don't think we need supplemental briefing but our Supreme Court case as Justice Doherty pointed out, indicates that in fitness hearings, it's manifest weight of the evidence, except as opposing counsel indicated. The focus here is perhaps how the hearing, at least according to opposing counsel was conducted. Do you agree with that being this year. No, Your Honor. The evidence or sufficiency of the evidence. No, Your Honor, I believe that the, and I apologize if this is not answer your question exactly but I believe that the hearing conducted was adequate, based on the evidence that was considered. So I would say that manifest or abuse of discretion is the adequate standard. Thank you. So, Mr. Gatton, let's make sure we put this in context. We had a finding of unfitness right and it. We know that the manifestation of the unfitness that doesn't seem to be disputed. Were these hallucinations was a record outside of the, we don't know somebody's hallucinating was they tell us right. But we know that there was validation of that in terms of what he told the psychiatrist in terms of his medical history. And the burden now fell on the state to prove that he was no longer unfit. Is it sufficient to prove he's no longer unfit for just the defendant to say, I'm no longer or I'm not having hallucinations, even if it contradicts what he said in other records during the timeframe that he said he wasn't hallucinating. It's, it's not just what the defendant said during your hearing your honor it's how he conducted himself during the hearing a lot of, but but isn't that consistent with the nature of these hallucinations. What he would have said, meaning, I'm fit and I don't want to have this attorney represent me. These are things that are consistent with what the hallucinate the agreed hallucinations had been telling him to say earlier. They are, but I would note that defendant does not always follow his the directives that the alien I don't want to mispronounce the aliens name so I will just refer to her as the alien that the alien tells him to do in his first interview with Dr. He definitely made it very clear that the alien does not want him to tell anyone about her less she be less she go away. Despite this fact, defendant told the police about the alien, he told his girlfriend about the alien, he told his counsel, Mr. Piper about the alien he told both medical staffs about the alien. What do we take what is the significance of that. The significance of that to me is that he does not Dr. Killian's contention is that he would not listen to or follow the advice of his counsel, he would only follow the advice of the alien, but it shows that defendant has the agency to be able to make his own decisions, and that kind of that kind of works in a circle right because the only way we know what the alien says is what he tells us. That's so, so he could he could never, he could never say anything about the alien. Under that analysis right because that's the only way he could prove he follows the alien. He. I'm sorry. Can you state your question. I guess we have impeach impeachment about whether he follows the alien or not, but it's, he has said it it's his words that the alien would tell him to lie about seeing her. And he in fact testified. I don't see her as counsel said he didn't say, I no longer see her. How, how does that reassure us that he has had fitness restored. I think, again, you have to look towards that in itself is not reassuring but you have to look towards his conduct during the hearing, as well as Dr pants opinion. And I think that that is a sufficient evidentiary basis to satisfy the standard. But if he had that same conduct during the hearing meticulously spoke to the court. But also told him yes and the alien is talking to me now. How would we feel about fitness, isn't, isn't the latter really the thing. No, I think the thing is his ability to assist with his counsel and I think that the, it's not necessary, but it's not necessarily just because he hears the alien that he cannot assist with his counsel. I think that further. If we look at his performance at trial, he did an adequate job of not only assisting his counsel but actually putting on his own defense he was able to excuse body or people he was able to introduce evidence he was able to advance a theory that someone else was the murder in question which given the circumstances of the case was probably the only theory he could have realistically advanced it as Dr Killian said in the hearing it's about his functionality. People can be schizophrenic and they can still be fit to stand trial and I think the evidence at the hearing was sufficient to support that finding. What about as counsel said the denial of his history of his diagnosis of schizophrenia of the attribution to his earlier hallucinations is being somehow related to sleep deprivation. Does that give us some concern. I think it would be, it would have been better had he not made those statements but I don't think those statements and those those are enough to conclude that he cannot. He was not able to assist with his defense. I believe, unless there are further questions. Excuse me, is all I have, and I would ask that the court affirm this court from the judgment of the court below. Thank you. I guess I would, I do have one other question and that's regarding a retrospective fitness hearing versus a new trial. Why is a retrospective fitness hearing appropriate, given the fact that we're not focused on a strictly medication and that were two and a half years out. I believe that question so that given, I'm sorry I'm blanking on the case that was stated opposing counsel. Neil Neil Neil prescribes that are restorative fitness hearing, it can still be ordered, even after the length of time, regardless of the amount of time that has passed. Well, but I believe there, if I'm not mistaken, that was focused only on medic the issue of medication. There are a narrow group of cases of situations where it is appropriate to hold a retrospective fitness hearing, even if we're more than a year out. Believe there is, but I apologize. I would need to look back on my notes, I apologize. That's okay. So thank you. I don't have any further questions. Thank you, Council. Thank you, Justin zero. Thank you, Council, and we'll let Miss Lucy now her argument. Thank you, your honor. Briefly to the second argument that I made. The state has argued that there was not a problem of cognitive understanding here. What I would say here is, and the state also argued that the, there was a common misunderstanding that Dustin had about his right to plead guilty or not guilty. What I would point out is that we don't know, because the trial court did not make a record in this case about Dustin's ability, not just to understand the words of the admonishment, but to fully comprehend the actual consequences. And what all is going on. We just don't have that in the record, which given that this is such a due process fundamental concept is deeply problematic. Indeed, in Indiana Edwards, which admittedly is, you know, did give the state's discretion. The Supreme Court noted that mental illness is not a unitary concept that it varies in degree and so the fact that Dustin was able to then somewhat put on a somewhat cogent defense later really doesn't apply when the question is, was due process at this hearing, and in both hearings, the answer is no. Also, I have a question for you about the fitness hearing. If my understanding is correct. At the fitness hearing, the court received the initial report of Dr. Killian about the defendant being unfit, which led to his finding he was unfit for trial and commitment to HHS. So I have that report. And then, in addition, the court also received the reports from Dr. Casey and Dr. Pam regarding the defendant by stipulation. Then, in addition, the court heard from Dr. Killian's testimony in court, which also as Justice Dougherty pointed out was when Dr. Killian was present to hear the defendant testify and not only was able to testify generally but added his assessment of the defendant based upon what the defendant testified. And in addition, the court, as Justice Dougherty pointed out, asked Dr. Killian several questions himself. And last, the court heard from the defendant and received his testimony concerning this question and after all that made a determination that the defendant was fit to stand trials fitness had been restored. That isn't the question for us that you're arguing on appeal, one where we would have to conclude to reverse that determination that this ruling by the trial court was unreasonable, but no reasonable person the position of the trial court, having received and heard all this evidence could have concluded that the defendant was now fit to stand trial. Your Honor, I believe that this court would have to conclude as the first district did and people be Gibson, that the trial court simply did not make enough findings to reconcile the conflict. So let me interrupt. That's entirely incorrect. It's just as Dougherty pointed out, I think justice enough to Gibson was a case where there was essentially receiving this by stipulation the court conducted no hearing. That was the problem with Gibson. In this case, we have extensive evidence being presented totally unlike Gibson I'm surprised you would even mentioned Gibson in this context, the court heard all the evidence I just mentioned, heard Dr. Killian received the stipulations heard the defendant received the early reports. My question is, doesn't the don't we review have to conclude that the decision of the trial court was unreasonable, but no reasonable person, having heard all this could have concluded that the defendant was now fit to stand trial. I believe the conclusion that I'm urging this, this court to find is that the trial court did not over did not use the correct presumption, when it stated that I don't know how Dustin prove that he was fit, rather than precluding the possibility of him being unfit. That's where Gibson comes in I do understand the differentiation. Council. I beg your pardon. My question is essentially a standard review. Don't we have to conclude that no reasonable person having heard the evidence that the court did in this case could have concluded that the defendant was fit to stand trial. Isn't that the question before us. I don't know that this court needs to go so far but if this court feels that it does then that's absolutely supported by the record where Dustin's testimony was filled with blatant falsehoods, your honor I am trying to go as quickly as possible I did see that my time has elapsed and I do apologize for taking the sports time. That's that falls under a saying where another court found that a defendant merely saying, Oh no I'm fit now this is okay, makes a mockery of the entire idea of a fitness hearing so the trial court credit credit Dustin's testimony, above that of Dr Killian's on why without giving us a record of, of why this this live build testimony. This report from Dr pan where Dustin had already begun his, his unraveling of the truth was should be given better weight when the state had to prove by hundreds of the evidence that he had been restored to fitness and that simply was not done here the record does not support that conclusion your honor. Thank you counsel and thank you Mr. The court will take this matter under advisement will now stand in recess.